E. S. UTTER AND M. E. CALDEN, RESPONDENTS, *v.* TRUMAN F. CHAPMAN, APPELLANT.

MEASURE OF DAMAGES FOR BREACHES OF CONTRACT FOR THE PERFORMANCE OF SERVICES. — While the contract price will be adapted as the *prima facie* measure of damages in actions for breach of contract for the performance of services, the damages may, nevertheless, be increased or diminished, accordingly as the proof shows that the plaintiff has sustained an actual loss greater or less than the contract price.

IDEM—Parties whose services have been refused, when offered according to their contract, may not refuse employment from others, and insist upon the payment of the full contract price, but should protect themselves from loss, so far as it may be done by reasonable exertions.

IDEM.—The amount received for the employment of the services by other parties, should be deducted from the amount of the damages computed by the contract price.

APPEAL from the District Court of the Fifth District, San Joaquin County.

The case is stated in the opinion.

*George A. Nourse,* for Appellant :

*First*—The rule of law in awarding damages to a party injured by a breach of contract (with no element of fraud in the case) is, that he shall receive a compensation in money, equal to the actual pecuniary loss directly sustained, with such provision as to costs and counsel fees as may be made by statute. (Sedgwick on the Measure of Damages, 35–6 ; *Ferrer* v. *Beale,* 1 Lord Raym. 692 ; *Rockwood* v. *Allen,* 7 Mass. 254 ; *Bussy* v. *Donaldson,* 4 Dallas, 206. See, also, *Co. Litt.* 257, *a.* ; *Dexter* v. *Spear,* 4 Mason, 115 ; *Short* v. *Skipwith,* 1 Brock R. 102–115 ; *Bender* v. *Fronberger,* 4 Dallas, 436–444 ; *Griffin* v. *Colver,* 16 N. Y. 489, p. 495.)

*Second*—This compensation is awarded according to certain rules of law, which the jury are not at liberty to disregard, and which equally control the action of the Court. Thus, the measure of damages is, as a general rule, matter of law, to be disposed of by the Court. (Sedgwick on the Measure of Damages, 30–202 ; *Walker* v. *Smith,* 1 Wash. C. C. R. 152 ; *Graves* v. *Dash,* 12 Johnson, 17.)

*Third*—In the case at bar, the damages actually sustained by plaintiffs, by reason of the defendant's failure to furnish them freight, do not amount to so much as the damages awarded ; for, 1st—It appears by the testimony of their own witness, Moore, that the plaintiffs' boat lost no time by failing to obtain freight from defendant ; that it had plenty to do in the way of carrying freight, from the date of defendant's alleged breach of contract, to the commencement of the suit ; and that on all freight carried by said boat during

that period (and it did not have to go up river for it so far as Paradise City), $2 50 per ton freight to Stockton was paid, instead of the $2.00, as agreed by the contract. (*Shannon* v. *Comstock*, 21 Wend. 457; *Wilson* v. *Morton*, 1 Denio, 602; *Clark* v. *Morsiglia*, *Id.* 317; *Spencer* v. *Halsted*, *Id.* 606; *Castigan* v. *Mohawk and Hudson R. R. Co.* 2 Denio, 609; *Heckscher* v. *McCrea*, 24 Wend. 304.)

*Terry, Carr & Wilkes*, for Respondents:

The rule of damages depends upon the nature of the case. Mr. Sedgwick divides the cases into three classes:

*First*—When money alone is to be paid, as in suit on a note for the direct payment of money. In such cases, the contract price, or principal sum, with legal interest, is the measure of damages.

*Second*—Cases of tort, wherein even the motives and conduct of the defendant may be considered, and vindictive damages allowed.

*Third*—Contracts to do, or not to do, a particular act. Here, although the actual loss be the rule, yet, the contract itself furnishes the measure of damages; or, in other words, it furnishes the rule by which to ascertain the actual loss. (Sedgwick, 112 and 200; 2 Smith's Leading Cases, top page 537, side page 465.)

What, then, is the actual loss to plaintiffs' respondents, by the default of defendant, appellant in this transaction? This question is best answered by showing what would have been their gain if the contract had been performed. Transporting five hundred tons of grain at $2.00 per ton, would have given them $1,000. But respondents would have incurred $500 expense in complying with their contract. This amount of expense must, of course, be taken from the $1,000, in order to ascertain what amount would have been gained. This leaves $500, as the amount respondents would have gained by appellant's performance; and hence it is what *they lost* by his failure to perform. The amount thus ascertained is that for which the Court gave judgment; and *it* is that "*actual loss*" mentioned in the books, of which the *contract affords* the *true* measure. (7 Hill's Reps. 75.)

If the expense of performing the contract *could not* have been ascertained, then $1,000 being the contract price would have been the *measure* of damages ; as in the case of *Baldwin* v. *Bennett,* and *Coffee* v. *Meiggs;* but since it was ascertained, then the measure is the difference between the expense of performance and the contract price ; or, in other words, it is the $500 which respondents lost by appellant's default. (*Cunningham* v. *Dorsey,* 6 Cal. 19 ; *Little* v. *Mercer,* 9 Mo. 216 ; *Coffee* v. *Meiggs,* 9 Cal. 363 ; *Masterson & Smith* v. *Mayor etc. of City of Brooklyn,* 7 Hill, 61, in full; *Hale et al.* v. *Trout et al.* 35 Cal. 229.)

RHODES, J., delivered the opinion of the Court :

It is apparent from the contract, though it is not drawn according to the most approved forms, that both parties are bound—the defendant to furnish five hundred tons of wheat, and pay $2 per ton for its transportation ; and the plaintiffs to transport the wheat from Paradise City to Stockton. It is also clear from the evidence that the defendant failed to furnish the wheat. Such failure amounted to a breach of the contract, for which the defendant is responsible in damages, and the important question in the case relates to the measure of damages.

The plaintiffs insist on the rule that the contract furnished the measure of damages ; and the defendant on the rule that compensation will only be given for actual loss. In the discussion of the question of the measure of damages in contracts relating to personal property and services, Sedgwick says that "the two cardinal principles which will be found to pervade and regulate this branch of the subject are : First—That the plaintiff must show himself to have sustained damages, or, in other words, that actual compensation will only be given for actual loss ; and, Secondly—That the contract itself furnishes the measure of damages." (Sedg. Meas. of Dam. 200.)

In actions for money had and received, for goods sold and delivered, for work, labor and services performed, and many other cases, there is no difficulty in making the application

of those rules, and laying down the correct measure of damages ; for, leaving out of view matters merely incidental to the cause of action, such as interest and the like, the measure of damages furnished by the contract is the actual loss sustained by the plaintiff. The two rules precisely coincide. But there are other classes of actions, such as actions upon contracts for the sale of goods, when the goods have been tendered but not delivered ; or for personal services, in which the services have been tendered but not accepted, and other cases of the like character, in which the contract does not furnish the measure of damages, as the contract price may greatly exceed the actual loss sustained by the plaintiff. When the case is clear of fraud on the part of the defendant, it is always the aim of the Court to give damages, and such damages only as will compensate the plaintiff for his loss ; and the rule that the contract furnishes the measure of damages is never permitted to override the other rule, except when the parties have stipulated as to the amount of damages in case of a breach. The author just cited remarks upon this point : "But when it is said that the contract furnishes the measure of damages, it is not thereby meant that the party ready to perform his contract will be able to recover of the party in default the entire price named in the agreement. On the contrary, it has been held in many cases that in actions for breach of contract, the measure of damages is not the price stipulated to be paid on full performance, but the actual injury sustained in consequence of the defendant's default. For the rule that the contract furnished the measure of damages is subject to the other rule already stated, that compensation is only to be given for actual loss." (*Id.* p. 210.) The proposition that the contract price is *prima facie* the measure of damages, may be laid down as generally true ; but that it amounts to no more than the *prima facie* measure of damages is evident, because the plaintiff may, on the one hand, increase the damages beyond the contract price, and on the other, the defendant may reduce the damages below the contract price. The purchaser, in an action for a failure to deliver the goods purchased, may not only recover the price paid, but, also,

the excess of the market value, at the time of the breach, above the contract price; but if he has not paid the price, he can recover only such excess, and if there be no excess, he cannot recover anything beyond nominal damages. In *Hale* v. *Trout* (35 Cal. 229)—which is much relied on by the plaintiffs—the contract price was adopted as the measure of damages in respect to the lumber that had been delivered; but as to the residue of the lumber specified in the contract, the recovery was reduced by deducting from the contract price—ten dollars per thousand feet—the cost of manufacturing and delivering the lumber—six dollars per thousand feet. Had the plaintiffs in that case delayed the bringing of their action until they had manufactured all the lumber according to the contract, their recovery for the lumber not delivered would have been limited to the contract price, less the market value of such lumber, had the market value thereof been proven. But the case, as presented, was, as to the lumber not delivered, like *Masterson* v. *Mayor of Brooklyn* (7 Hill, 61), and several other cases cited in the opinion—an action on the contract, for the loss of profits sustained by the defendant's breach of the contract; and in neither case was the market value of the property proven. Had the market value been proven, in those cases the recovery might have been quite different.

A similar result will follow the application of those rules to breaches of contracts for the performance of services; that is to say, that while the contract price will be adopted as the *prima facie* measure of damages, the damages may be increased or diminished, accordingly as the proof shows that the plaintiff has sustained an actual loss greater or less than the contract price. And these rules will have the same application, whichever party to the contract may be the plaintiff in the action. In an action for an entire failure of performance on the part of the party contracting to furnish the services, the other party may, if he has paid the contract price, recover the same, together with such additional amount, if any, as was required to be paid to procure similar services, and if the contract price has not been paid, his recovery is limited to such additional amount; for that was all the actual

loss he sustained by the breach. And when, on the other hand, services have been performed, the party who has performed them is entitled to recover the contract price, the contract in such case furnishing the measure of damages. But when the performance of the services has been tendered but not accepted, the party offering to perform the services does not, necessarily, sustain a loss equal to the contract price—or a loss equal to the contract price, less the expense of the performance of the services. The contract may furnish the measure of damages, in the respect that the damages will not be given in excess of the contract price, but the damages may be less than the latter sum. If he has been continually employed in services of the same character as those mentioned in the contract, and at the same or a greater rate of compensation, the question arises (and that is the real point of the controversy between the parties here), whether the amount received for such services from others can be taken into account in estimating the damages he has sustained by the defendant's breach of the contract. The case is argued upon the theory that the grain was to be transported by the plaintiff's steamer. There was evidence to show that the steamer had been employed during some portion of the time, after the defendant's breach of the contract, in transporting grain to Stockton from points on the Tuolumne river, nearer to Stockton than Paradise City; that the current rate was $2 50 per ton, and that a large amount of grain remained at the latter place, because there were not boats enough take it away. If the plaintiffs were furnished by other parties with grain for transportation at the same or greater rates than those specified in the contract, and they were continuously employed in that business during the time when they would have performed their contract, except for the defendant's refusal to furnish the grain according to his agreement, they have suffered no actual loss beyond the time occupied and the expense incurred in offering to perform the contract on their part; and if they were thus employed by others only a part of such time, the amount received therefor goes to reduce the loss which they would

otherwise sustain by the defendant's breach of the contract. And the principle may be carried further. The authorities hold, and, we think, upon solid reasons, that parties whose services have been refused, when offered according to their contract, may not refuse employment from others, and insist upon the payment of the full contract price, but should protect themselves from loss, so far as it may be done by reasonable exertions. It seems clear that a similar duty is ·incumbent on either party to protect himself from loss, when it can be done by reasonable exertions and expense, and that each party is entitled to a like construction and a similar application of the rules for the measure of damages. There is no just ground for saying that one party shall recover only compensation for his actual loss, and the other shall have his damages measured by a larger rule. (*Heckscher* v. *McCrea*, 24 Wend. 304 ; *Shannon* v. *Comstock*, 21 Wend. 457 ; *Wilson* v. *Martin*, 1 Den. 602 ; *Clark* v. *Morsiglia*, 1 Den. 317 ; *Castigan* v. *Mohawk & H. R. R.*, 2 Den. 610 ; *Ashburner* v. *Balchen*, 7 N. Y. 262; *Bailey* v. *Damon*, 3 Gray, 92 ; Sedgwick Meas. of Dam. 211, 361.)

Judgment reversed and cause remanded for a new trial.

Mr. Justice Sprague expressed no opinion.